REQUESTED BY: Senator Peter Hoagland Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Hoagland:
You have submitted to us proposed amendments to LB 599, and have asked our opinion as to the constitutional validity of that bill, as so amended, `at your earliest convenience.' In view of the complexity of the whole subject of the federal regulation of takeover bids, we can only give our general impressions in any reasonably prompt opinion. In a suit involving LB 599, as so amended, we would expect to spend several weeks researching the subject.
In our Opinion No. 88, issued April 25, 1983, we concluded that the original version of LB 599 was invalid under the Commerce Clause, and cited Edgar v. Mite Corporation, ___ U.S. ___, 73 L.Ed.2d 269, 102 S.Ct. 2629 (1982). In that case the Court held that the Illinois takeover statute violated the Commerce Clause because it attempted to regulate transactions not only with Illinois residents, but also with those living in other states and having no connection with Illinois.
Your proposed amendment would attempt to eliminate this objection by providing that any injunction issued under the act could enjoin only offers to or purchases from Nebraska residents pursuant to a takeover bid. The question is whether this makes the bill comparable to the `blue-sky laws,' which the Court distinguished in Edgar, on the grounds that such laws regulated only transactions occurring within the regulating states.
This proposed amendment would certainly eliminate the clear violation of the Commerce Clause present in the original version of the bill, but we would not be prepared, without a great deal of research, to give it a clean bill of health with respect to the Commerce Clause. The offer by an out-of-state company to purchase the stock of a Nebraska resident is an interstate commerce transaction, and we are not confident that Nebraska can prohibit it. We point out that in Edgar the Court noted that Congress had inserted15 U.S.C. § 78bb(a) into the Securities Exchange Act, a provision designed to save state blue-sky laws from preemption. We find no such saving provision in the federal takeover statute.
In our previous opinion we pointed out that Congress may have preempted the entire field in the takeover area. Some language in Edgar points in that direction. In discussing the federal takeover statute, the Court pointed out that Congress intended to protect investors, by furnishing them with necessary information, and by withholding from incumbent management and the bidder any undue advantage which could frustrate the exercise of an informed choice.
The Court discussed at some length the attempt of Congress to strike a balance between management and the takeover bidder. Presumably, Congress has achieved the balance it wants in the Williams Act. A takeover bid is an attempt by the bidder to gain control of the target company. Theoretically, at least, an injunction against the acquisition of shares from Nebraska residents might be just enough to frustrate this effort, and to tip the balance in favor of incumbent management.
Furthermore, an injunction against the purchase of the shares of Nebraska residents might deny to such residents the advantage, given to all other shareholders, of selling their stock at a bonus price. If the purpose of the federal takeover statute is to protect investors, such an injunction might be held to frustrate the purposes of the federal act.
The answers to your questions are far from crystal clear, but our opinion is that there is a strong likelihood that the Court will ultimately say that Congress has occupied the field, and that there is no room for state regulation, at least where anything other than entirely intrastate transactions are involved.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General